Conor Huseby
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
(503) 326-2123 Telephone
(503) 326-5524 Facsimile
 Conor_Huseby@fd.org

Scott L. Mullins
Mullins Law Office, LLC
1000 SW Broadway St., Suite 2300
Portland, Oregon 97205
971-383-1315 Telephone
503-525-4833 Facsimile
scott@slmullins.com

Per C. Olson, OSB #933863
HOEVET OLSON, PC
1000 SW Broadway, Suite 1740
Portland, Oregon 97205
Telephone: (503) 228-0497
Facsimile: (503) 228-7112
Email: per@hoevetlaw.com

*Attorneys for Defendant Robert J. Jesenik*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No.  3:20-cr-00228-01-SI |
| **Plaintiff,** | **RESPONSES TO GOVERNMENT'S PROPOSED JURY INSTRUCTIONS** |
| v. | |
| **ROBERT J. JESENIK,** | |
| **Defendant.** | |

Defendant Robert Jesenik, through counsel, objects to the government's proposed jury instructions to the extent that they are inconsistent with Mr. Jesenik's proposed jury instruction, ECF 410, and submits the following specific responses:

## I. Crimes, Wrongs, or Bad Acts

The government requests that this Court instruct the jury that Mr. Jesenik's practice of "avoid[ing] using email for anything controversial" is a "crime, wrong, or bad act." The defense objects to this instruction on three grounds.

First, an individual's practice of not using email for anything controversial is not a "crime, wrong, or bad act." Keeping controversial content out of email communications is actually a recommended practice. Employers often encourage employees to avoid writing an email that they would not want published in the newspaper. Mr. Jesenik was the leader of a large business. The evidence that the government seeks to admit is not a "crime," it is not "wrong," and it is not a "bad act." In *Phillips v. U.S.I.R.S.*, the Ninth Circuit held that evidence that a leader of a company controlled which bills were paid and prioritized paying his employees and weak creditors instead of strong creditors, was not evidence of wrongs or prior bad acts. 73 F.3d 939, 944 (9th Cir. 1996). The court noted that "[p]eople of good character may choose to pay their employees and weak creditors instead of paying the strongest creditor of all, the IRS." And while this evidence could arguably also have gone to "opportunity to control which debts were paid, absence of mistake as to which debts were paid, and attention to which debts were paid," it was "not evidence of character from which an inference of bad conduct was suggested." *Id.* Similarly here, there is no inference of bad conduct or propensity involved in the evidence that Mr. Jesenik tried to keep controversial content out of his email. Model Instruction 2.10 is not appropriate.

Second, because Mr. Jesenik's practice around email is not a crime, wrong, or bad act, the instruction, which tells the jury that the evidence can *only* be used for certain limited purposes, amounts to an improper comment on the evidence. Limiting instructions, such as Ninth Circuit Model Criminal Instruction 2.10, are required when evidence is admitted for one permissible purpose, but could also be used by the jury for an impermissible purpose, like propensity or character. Here, evidence that a CEO attempted to keep controversial material out of his email is not something that could be used for an impermissible purpose. Instead, it has many possible permissible uses by the jury. A jury might conclude that Mr. Jesenik was a cautious person who tried to use good reason and discretion in his business dealings. Or they might conclude, as the government hopes that they will, that it is evidence of Mr. Jesenik's state of mind or preparation in relation to the commission of the charged crime. By instructing the jury that the *only* permissible use of this evidence is related to whether Mr. Jesenik had a culpable mental state, prepared to commit the acts charged in the indictment, or did not commit the crimes in the indictment by accident, the Court would be commenting on the evidence and making a logical inference that should be reserved for the jury.

Finally, because the government is the proponent of the evidence, the Court should not agree to give a limiting instruction over the defendant's objection. *See United States v. Aguilar-Escobedo*, No. C-08-4311-RMW, 2010 WL 3059031, at *3 (N.D. Cal. Aug. 2, 2010), aff'd, 455 F. App'x 742 (9th Cir. 2011) (discussing a district court's decision to decline to give the "crimes, wrongs or acts" instruction when the defense counsel objected to such instruction). There are many reasons why a defendant might make a strategic determination that a limiting instruction is not helpful for his defense. Because the government is the party seeking to admit this evidence, the Court should not instruct the jury with a limiting instruction over the defense objection.

## II. "Knowingly" Instruction

The defense objects to the second sentence of the government's requested "knowingly" instruction, which reads: "The government is not required to prove that the defendant knew that his acts or omissions were unlawful." This sentence is bracketed in the Ninth Circuit Model Criminal Jury Instructions and is not appropriately given in all cases. The comment to Model Instruction 4.8 provides that "[t]he second sentence of this instruction should not be given when an element of the offense requires the government to prove that the defendant knew that what the defendant did was unlawful." In this case, the second sentence of the "knowingly" instruction is inconsistent with the elements of conspiracy, which require "an agreement to do something unlawful" and "willfully participating in the unlawful plan." A defendant cannot enter into an agreement to do something unlawful, without knowing that "his acts or omissions are unlawful." Therefore, the second sentence of the knowingly instruction should not be included in relation to the conspiracy instructions.

The second sentence of the instruction is also problematic for the money laundering charge, which requires that the defendant knew that the money involved in the transactions was the proceeds of criminal activity:

> In the context of a money laundering offense, the second sentence of this instruction may be given if altered to clarify that it applies only to the act of engaging in monetary transactions, and not to whether a defendant knew the money involved in the transactions was the proceeds of criminal activity.

Comment, Ninth Circuit Model Criminal Jury Instruction 4.8. For these reasons, Mr. Jesenik objects to the inclusion of the second sentence in the knowingly instruction.

### III. Pinkerton Instruction

The defense objects to the inclusion of the Pinkerton instruction. In this case, due to the complexity and length of the Superseding Indictment, a Pinkerton instruction will cause confusion. *See United States v. Manzella*, 791 F.2d 1263, 167 (7th Cir. 1986) (holding that the Pinkerton instruction can cause confusion in some complex cases); *United States v. Sanchez*, 917 F.2d 607, 612 n.4 (1st Cir. 1990) (holding that a Pinkerton charge "should not be given as a matter of course").

### IV. Vicarious Liability

The defense objects to the government's proposed vicarious liability instruction. This instruction is confusing and unnecessary in light of the Pinkerton instruction requested. The Pinkerton instruction already instructs the jury about co-conspirator liability. Providing an instruction that also addresses co-schemer liability, without defining the difference between a co-conspirator and a co-schemer, will only cause confusion.

If the Court determines that the vicarious liability instruction is necessary, the instruction below is more appropriate and accurate:

> First, the co-schemer was a knowing participant in the scheme to defraud investors charged in Counts 2 through 29 of the indictment;
>
> Second, the co-schemer committed the offense in furtherance of the scheme to defraud Aequitas investors;
>
> Third, the defendant was a knowing participant in the same scheme to defraud, and possessed the intent to deceive and cheat Aequitas investors; and
>
> Fourth, the offense committed by the co-schemer fell within the scope of the scheme to defraud and was one that the defendant could reasonably foresee as a necessary and natural consequence of the scheme to defraud.

[*United States v. Holmes*, 5:18-cr-00258-EJD, ECF 1206 at 29; *United States v. Stapleton*, 293 F.3d 1111 (9th Cir. 2002)]

Respectfully submitted this March 13, 2023.

*s/Conor Huseby*
Conor Huseby
Attorney for Defendant Jesenik

*s/Scott L. Mullins*
Scott L. Mullins
Attorney for Defendant Jesenik

*s/Per C. Olson*
Per C. Olson
Attorney for Defendant Jesenik

Jessica Greenlick Snyder
Assistant Federal Public Defender

Megan McVicar, Esq.